# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS N. TWEH, #366680 | * | |
| Plaintiff | * | |
| v | * | Civil Action No. GLR-12-2360 |
| MR. ROBERT GREEN, et al. | * | |
| Defendants | *** | |

## MEMORANDUM

Plaintiff Thomas N. Tweh ("Tweh") filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983. Defendants Robert Green, Captain Harold Payne, Corporal Rafiq A. Muhammad, Sergeant Michael Tate, and Anthony Sturgess (the "County Defendants"), by their attorney, filed a Motion to Dismiss, or in the Alternative for Summary Judgment. (ECF No. 13). Plaintiff has responded.[1] (ECF No. 35). After review of the papers and applicable law, the Court determines that a hearing is unwarranted. See Local Rule 105.6 (D. Md. 2011). For the reasons that follow, the dispositive motion will be GRANTED.

## Background

Tweh, an inmate currently confined at the Roxbury Correctional Institution, filed the instant Complaint alleging that he was denied adequate medical care and subjected to excessive force while housed at the Montgomery County Correctional Facility ("MCCF"). Plaintiff alleges

---

[1] Defendants Sheriff's Deputy Green and Sheriff Deputy Sangco have been served with the Complaint. Their Answer has not yet been received.

Defendants Jeffers, Dr. Dadgar, Dr. Davaris and P.A. Stansbury have not been served with the Complaint. Plaintiff will be directed to assist the Court in obtaining service or process on Dadgar, Davaris and Stansbury. For the reasons that follow Plaintiff's clams against Jeffers will be dismissed.

that Warden Robert Green ("Green") was negligent in failing to properly supervise the employees of MCCF.  Compl. ¶ 1, ECF No. 1.

Plaintiff states that he had medical authorization to be double handcuffed.  He alleges that Sergeant Michael Tate ("Sgt. Tate") violated the policy of MCCF in failing to verify that Plaintiff was authorized to be so handcuffed.  Plaintiff states that Sgt. Tate observed Plaintiff was in pain from the use of a single set of handcuffs on September 24, 2010, but "scold[ed] him stating, 'It was your fault for forgetting your authorization and you would have to suffer for it.'"  Plaintiff states that as a result of Sgt. Tate's action he suffered damage to both shoulders.  Id. ¶ 2.

Plaintiff further alleges that on October 10, 2010, Sgt. Tate began harassing and intimidating him by having other officers wake him on four occasions in October and November 2010, at 2:00 a.m. which deprived him of needed sleep.  Plaintiff further alleges that on November 22, 2010, Sgt. Tate verbally harassed him with unspecified abusive language and subjected him to intimidation.  Plaintiff alleges this occurred in retaliation for his having filed a grievance against Sgt. Tate for the September 24, 2010 handcuffing incident.  Id.

Plaintiff alleges that Captain Harold Payne ("Cpt. Payne") failed to investigate Plaintiff's complaints regarding Sgt. Tate. Plaintiff states that despite Cpt. Payne's assurances, he failed to prevent similar incidences regarding double handcuffing from occurring.  Id. ¶ 3.

Plaintiff alleges Corporal Rafiq A. Muhammad ("Cpl. Muhammad") "wrote a malicious disciplinary report" against him on July 30, 2010.  Plaintiff also alleges that Cpl. Muhammad denied him medical care by refusing to double handcuff Plaintiff on that date so he could be transported to an outside medical appointment.  Id. ¶ 5.

Plaintiff alleges that on December 6, 2010, Sgt. Jeffers threatened him for refusing to be handcuffed in the back. Plaintiff alleges that Sgt. Jeffers should have known that he had authorization for alternative handcuffing. He claims that his property, including the alternative handcuffing authorization, was taken from him while he was on segregation. Plaintiff states that Sgt. Jeffers "threatened to call the goon squad to rough him up" before he attempted to verify Plaintiff's medical authorization for alternative handcuffing. Plaintiff states that "the officer at the desk eventually called medical after over 5 minutes of pleading with Sgt. Jeffers to verify that he had a handcuffing authorization." Id. ¶ 4.

Plaintiff alleges that he spoke with Mr. Anthony Sturgess (Sturgess) on three occasions in September and October, 2010. He states that Sturgess told him that he "knew what [Plaintiff] was trying to do" and he "would be ready for [Plaintiff] when the time comes..." Id. ¶ 6. Plaintiff alleges that Sturgess had the ability to resolve Plaintiff's medical complaints but failed to do so advising Plaintiff that he was not obligated to follow the recommendations of the surgeon. Plaintiff further alleges that Sturgess advised him that he was scheduled to see an orthopedic surgeon for his shoulder injury but that never occurred.[2] Id.

Defendants' version of events offer additional information. During the time at issue, MCCF was implementing a not yet fully functional computer program which would allow staff to verify medical authorizations. Def.'s Motion to Dismiss Ex. 3. at 1, ECF 13. As such, the practice in place required inmates to be in possession of their medical authorization indicating a need for alternative cuffing. If the inmate failed to possess the authorization he would be denied the alternative cuffing. Id., Ex. 3 and 4. That policy was provided to Plaintiff and contains

---

[2] The remainder of Plaintiff's Complaint details allegations against the deputy sheriffs and medical staff and need not be recounted here.

mandatory language advising the inmate of the necessity of possessing the authorization for the authorization to be effective. Id. MCCF inmates who are being transferred to outside appointments are handcuffed by Montgomery County Sheriff's deputies rather than by MCCF correctional staff. The Sheriff's Office policy is to use a single set of handcuffs behind the back. Id., Exs. 1-3.

On July 30, 2010, Plaintiff was scheduled for an outside medical appointment. Id., Ex. 2. Cpl. Muhammad escorted Plaintiff, without handcuffs, to Processing for transport by sheriff's deputies. Id. The deputies had conducted a pat-down search of Plaintiff and attempted to handcuff Plaintiff with one set of handcuffs when Plaintiff refused to comply with the orders. Plaintiff stated he was refusing to be handcuffed because he had a medical authorization to be handcuffed in front. Plaintiff did not have the authorization with him and the medical unit was contacted in order to verify Plaintiff's statement. Medical staff indicated there was no order permitting Plaintiff to be handcuffed in front. The deputies advised Plaintiff that he would not be transported unless he was handcuffed behind his back. Plaintiff refused to be handcuffed in back and the deputies refused to transport him. Cpl. Muhammad filled out an adjustment report detailing the exchange and charging Plaintiff with a rule infraction for refusing to follow direction from MCCF staff and sheriff's deputies. Id. Plaintiff received a hearing on the infraction and was found not guilty of the charge. Id., Ex. 3.

On September 24, 2010, Sgt. Tate was working in the Traffic Office in the Processing area of MCCF, coordinating the transportation of MCCF inmates to the custody of the Montgomery County's Sheriff's Office. Id. Ex. 1. Sgt. Tate heard a commotion in the Processing area. He came out of the Traffic Office and observed Plaintiff refusing to be

4

handcuffed by sheriff's deputies. Id. Sgt. Tate instructed Plaintiff to comply with the deputy. Plaintiff responded that, for medical reasons, he needed two sets of handcuffs. Sgt. Tate asked whether Plaintiff had the medical authorization slip. Plaintiff responded, "No, but it hasn't been a problem before!" Id. Sgt. Tate informed Plaintiff he was required to be in possession of his paperwork but he would call medical to verify the authorization. Approximately five minutes after contacting the medical unit, Sgt. Tate received verification that Plaintiff had authorization to use two sets of handcuffs. When Sgt. Tate exited the Traffic Office to confer with the sheriff's deputies, he was advised that the matter had been taken care of. Sgt. Tate saw Plaintiff walking out of Processing to board the transport van along with other inmates but did not notice whether Plaintiff was single or double cuffed. Id. Sgt. Tate avers that he was not responsible for handcuffing Plaintiff and in fact did not handcuff Plaintiff. Id.

Sturgess is the Health Services Administrator with MCCF. Id., Ex. 6. He is a registered nurse and family nurse practitioner. Id. Plaintiff was incarcerated at MCCF from March 18, 2010 to December 22, 2010. MCCF is staffed with nurses who are county employees. MCCF contracts with physicians to provide inmates on-site medical care, treatment, diagnostics, and oversight of MCCF non-physician medical staff. Independently contracted physicians have authority to review, accept, reject, or modify recommendations of outside medical providers. Sturgess's position requires him to defer to the medical decisions of the physicians contracted by MCCF. Id.

Sturgess avers that he has reviewed Plaintiff's medical records which reveal that during Plaintiff's incarceration he was seen by members of the MCCF medical department or outside medical providers approximately 98 times. Plaintiff's myriad of complaints concerned skin

rashes, reading glasses, renal sonograms, dental care, and care for his chronic conditions. Plaintiff was provided consultations with nursing staff, independent contract physicians, and outside physicians. He was provided numerous diagnostic tests including blood work, x-rays, MRI, cardiac testing, renal sonograms, and pre-operative screening. Plaintiff was also provided medications which included maintenance medication for his chronic conditions as well as pain medications. Plaintiff received medication on a daily basis. He also received physical therapy for his low back. Id.

In regard to Plaintiff's shoulder complaints, medical records demonstrate that on July 27, 2010, a nurse practitioner employed with MCCF wrote an order referring Plaintiff to Daniel Lahr, M.D. an orthopedic specialist for evaluation of his shoulder complaint. Plaintiff was provided analgesic medication and muscle relaxants. Plaintiff was scheduled to see Dr. Lahr on July 30, 2010, but due to issues discussed above regarding authorization for alternative handcuffing he was not transported to the appointment. Id. On August 15, 2010, Dr. Dadgar, an independent medical provider, adjusted Plaintiff's pain medicine and muscle relaxants. Id.

On September 3, 2010, Sturgess requested Plaintiff be seen by an orthopedic doctor regarding his shoulder complaints. Id. On September 10, 2010, Plaintiff was evaluated by Dr. Daniel Lahr who recommended arthroscopic surgery to Plaintiff's left shoulder and indicated it could be scheduled at Plaintiff's convenience. Id., Ex. 5.

On October 11, 2010, Dr. Dadgar issued an order to schedule Plaintiff's surgery. On October 19, 2010, Dr. Lahr provided MCCF with the pre-operative requirements which needed to be completed by November 5, 2010 as the surgery was scheduled for November 12, 2010. Id., Ex. 6. On November 12, 2010, prior to the scheduled surgery, Plaintiff experienced an irregular

6

heartbeat which necessitated that the surgery be cancelled and Plaintiff was transported to Shady Grove Hospital for two days of cardiac monitoring. Id.

On November 19, 2010, MCCF medical staff again coordinated with Dr. Lahr's office to reschedule Plaintiff's surgery. The surgery was then set for December 7, 2010. Dr. Lahr's office advised that Plaintiff's pre-operative clearance was current but he would need proof of cardiac clearance for the surgery. On November 26, 2010, Dr. Dadgar requested a cardiology consult for Plaintiff's pre-operative clearance. On December 1, 2010, Plaintiff was transported to an outside provider for cardiac testing. He was cleared for surgery. Id.

On December 3, 2010, Dr. Lahr's office contacted MCCF and cancelled the surgery. Dr. Lahr was next available for surgery on December 14, 2010, but Plaintiff was scheduled to appear in the Circuit Court for Montgomery County for sentencing on that date. Dr. Lahr's next available date for surgery was December 22, 2010, however that was the date the Maryland Department of Corrections was to take custody of Plaintiff. Id., Ex. 6.

**Standard of Review**

A. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In reviewing the complaint in light of a Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005); Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th

7

Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Migdal v. Rowe Price-Fleming Int'l Inc., 248 F.3d 321, 325-26 (4th Cir. 2001). However, the aggregation of the specific criteria set forth in Rules 8, 9, 11, and 12 of the Federal Rules of Civil Procedure indicate that complaints must be justified by both law and fact. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

The Supreme Court of the United States explained a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss. Id. Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. Thus, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." Id. 570.

The court need not, however, accept unsupported legal allegations, see Revene v. Charles County Comm'rs., 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, see Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, at 678. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

B.  Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This does not mean that any factual dispute will defeat the motion, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal

quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Therefore, on those issues for which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

**Analysis**

A.  Respondeat Superior

Plaintiff's Complaint against Green and Cpt. Payne is based solely upon the doctrine of respondeat superior. There is no respondeat superior liability in claims arising under 42 U.S.C. § 1983. See Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior

liability under §1983); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001), citing Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no action or inaction on the part of Green or Cpt. Payne that resulted in a constitutional injury, and accordingly, his claims against them shall be dismissed.

B.  Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976).[3] "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

---

[3] Plaintiff's status during his incarceration at MCCF is unclear. The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992), citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988); see also Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) (pre-trial detainee's Fourteenth Amendment right with respect to excessive force is similar to

11

by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) citing Wilson v. Seiter, 501 U.S. 294, 297 (1991).

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).[4] Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. Farmer, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown, 240 F.3d at 390; citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions

---

prisoner's Eighth Amendment right).

[4] The United States Court of Appeals for the Fourth Circuit "has concluded that denial-of-medical-care claims asserted by pre-trial detainees are [also] governed by the deliberate indifference standard." Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001).

12

actually taken in light of suicide risk, not those that could have been taken).

Plaintiff's allegation that Sgt. Tate, Cpl. Muhammad, and Sgt. Jeffers were deliberately indifferent to his serious medical need is refuted by the record. It is undisputed that at the times at issue Plaintiff did not have with him, as required by MCCF policy, the medical authorization that he be double handcuffed. Sgt. Tate and Cpl. Muhammad aver that they, or someone working with them, contacted medical staff to verify Plaintiff's cuffing status. Cpl. Muhammad was unable to verify that Plaintiff was required to be cuffed in front, as Plaintiff had claimed. Sgt. Tate verified Plaintiff's order for double cuffing but when he returned to advise the deputies, he was advised that the matter was resolved and Plaintiff was already handcuffed and under escort. In both cases, Defendants did not have knowledge of Plaintiff's medical order, but endeavored to discern the status of same. Once they verified Plaintiff's handcuffing status they attempted to communicate that information to the deputies in charge of transporting Plaintiff. Sgt. Tate responded reasonably to the risk, once apprised of same, by attempting to advise the deputies of the double cuffing order. That the harm was not ultimately averted, is unfortunate, but does not create liability on behalf of Sgt. Tate. See Farmer, 511 U.S. at 844. Cpl. Muhammad was unable to verify Plaintiff's alternate handcuffing status and as such cannot be said to have had subjective knowledge of a risk of harm to Plaintiff. Plaintiff concedes that during the incident with Sgt. Jeffers his cuffing status was also verified and ultimately he was not handcuffed in back. No harm came to Plaintiff during the incident with Cpl. Muhammad or Sgt. Jeffers as in both cases Plaintiff was not subjected to single handcuffing in the back.

Plaintiff's allegation that Sturgess failed to provide necessary medical treatment for his shoulder injury is likewise belied by the record. The evidence before the Court demonstrates that

13

Plaintiff has received constitutionally-adequate medical care while housed at MCCF from March 18, 2010 to December 22, 2010, as to his shoulder injury. Plaintiff has been evaluated regularly regarding his shoulder injury. His care was coordinated with an outside orthopedic surgeon. He was regularly provided pain medication and the medical staff coordinated with the surgeon to schedule his surgery. His surgery was delayed due to Plaintiff's cardiac problems, the surgeon's scheduling difficulties, Plaintiff's court appearance, and ultimately by his transfer out of the custody of MCCF.

With respect to Sturgess, his conduct also does not establish an actual intent or reckless disregard for Plaintiff's medical need. The delays that occurred do not appear to be deliberate, nor have they resulted in harm to Plaintiff. In granting summary judgment, the Court does not imply that Plaintiff is not entitled to medical treatment for his serious condition. The right to treatment, however, is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added). The surgeon indicated that Plaintiff's surgery could be scheduled at Plaintiff's convenience. The delays in scheduling were all outside the control of Sturgess and MCCF. "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985), citing Gittlemacker v. Prasse, 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances in this case. Plaintiff has been evaluated repeatedly and provided appropriate tests, therapies, and medication. Accordingly, Sturgess is entitled to summary judgment as to Plaintiff's Eighth Amendment claim.

C.	Harassment and Retaliation

"[N]ot all undesirable behavior by state actors is unconstitutional." Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995). Verbal abuse of inmates by guards, including aggravating language, without more, states no constitutional claim. See Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (sheriff laughed at inmate and threatened to hang him); Blades v. Schuetzle, 302 F.3d 801, 805 (8th Cir. 2002) (racial slurs). The threats alleged in this case are not condoned by this court, but fall short of acts forbidden by the Fourth, the Fourteenth, or the Eighth Amendments. See Pink v. Lester, 52 F.3d 73, 75 (1995). Accordingly, Plaintiff's allegations that Sgt. Tate and Sgt. Jeffers threatened and harassed him, without more, fail to state a claim.

In order to prevail on a claim of retaliation, Plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); Pierce v. King, 918 F.Supp. 932, 943 (E.D.N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Plaintiff offers nothing in support of his claim that Sgt. Tate's having dorm officers, on four occasions, wake him early to remind him to bring his medical authorization was in retaliation for his having filed a grievance against him. "In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996). Plaintiff cannot prevail on this claim.

15

Additionally, Cpl. Muhammad avers that he did not write a false infraction against Plaintiff. Plaintiff does not claim that his right to due process was violated during the resulting adjustment proceedings. Rather, Plaintiff makes vague and conclusory allegations that a "false" infraction was filed against him. Conclusory statements are insufficient to survive a motion to dismiss. In any event Plaintiff received a hearing as to the disciplinary charge lodged by Cpl. Muhammad and was found not guilty of the charge. No injury was caused as a result of the allegedly false infraction report and Plaintiff's claim is subject to dismissal.

D.   Failure to Comply with Prison Policy

To the extent Plaintiff alleges Sgt. Tate did not follow MCCF policy in verifying Plaintiff's handcuffing authorization, his claim fails. To the extent any written directive was not followed to the letter, the adoption of procedural guidelines does not give rise to a liberty interest. Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987).[5]

## Conclusion

For the reasons stated, summary judgment is granted in favor of County Defendants. Plaintiff's Complaint against Jeffers shall be dismissed. A separate Order shall be entered in accordance with this Memorandum.

August 16, 2013                               /s/
                                              _____
                                              George L. Russell, III
                                              United States District Judge

---

[5] Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).