```
          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

THOMAS N. TWEH,                   *

    Plaintiff,                *

        v.                  *  Civil Action No. GLR-12-2360

ROBERT GREEN, et al.,             *

    Defendants.               *

## MEMORANDUM

Pending before the Court is Defendants', Sheriff Deputy Green and Sheriff Deputy Songco[1] ("Sheriff Defendants"), Motion to Dismiss, or in the Alternative for Summary Judgment (ECF No. 43) and Plaintiff's, Thomas N. Tweh, Motion for Default Judgment (ECF No. 51). After review of the papers and applicable law, the Court determines that a hearing is unwarranted. See Local Rule 105.6 (D.Md. 2011).

Tweh filed the above-captioned Complaint pursuant to 42 U.S.C. § 1983 against 11 defendants.[2] The Court previously granted Defendants Robert Green, Captain Harold Payne, Corporal Rafiq A. Muhammad, Sergeant Michael Tate and Anthony Surgess's

---

[1] The Clerk shall amend the docket to reflect the correct spelling of Defendant Songco's name.

[2] Defendants Dr. Dadgar, Dr. Davaris, and P.A. Stansbury have not been served with the Complaint.

("County Defendants") Motion to Dismiss, or in the Alternative for Summary Judgment and dismissed the Complaint against Sergeant Jeffers. (ECF Nos. 41-42). For the reasons given below, Sheriff Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment will be granted and Tweh's Motion for Default Judgment will be denied.

## I. Background[3]

Tweh, an inmate currently confined at the Roxbury Correctional Institution, filed the instant Complaint alleging that he was denied adequate medical care and subjected to excessive force while housed at the Montgomery County Correctional Facility ("MCCF"). Tweh states that at the time of the incident he had medical authorization to be double handcuffed.

As to the Sheriff Defendants, Tweh alleges that on September 24, 2010, he advised Defendant Green that he had a medical authorization to be double cuffed but did not have the authorization with him. Green advised Tweh not to worry, that Green would "work with him." However, Green "changed his attitude" when Tweh attempted to explain his condition to Defendant Songco. Tweh avers that Green then pointed a taser in

---

[3] Unless otherwise noted, the following facts are taken from the Complaint, Motion to Dismiss, and Response in Opposition.

his face and threatened to tase him if he did not put his hands behind his back.  Tweh states that due to his heart condition he was in fear for his life.

Tweh further alleges that Songco forcibly restrained him with only one set of handcuffs and with deliberate indifference to his medical needs.  Tweh states that Songco engaged in this behavior despite Deputy Ducket advising her to "get 2 handcuffs," and after he explained to her that he had forgotten his authorization for double cuffing.

Sheriff Defendants aver that on September 24, 2010, they were attempting to transport Tweh from the Montgomery County Maryland Corrections Facility ("MCCF") to the Montgomery County Circuit Court when Tweh resisted being handcuffed with the other inmates, indicating he suffered from an injury that required he be double cuffed.  Sheriff Defendants state that there was no information on Tweh's prisoner information card indicating the same.  To Sheriff Defendants' knowledge, MCCF did not have any record indicating that Tweh had injuries which prevented him from being handcuffed in the normal manner.  It was because of Tweh's continued resistance and belligerence, Sheriff Defendants argue, that Green threated to use a taser on him.  Other deputies restrained Tweh while he was handcuffed in the normal

manner. Once in handcuffs, Tweh cooperated and was transported to court. No taser was actually used.

Additionally, the Court previously noted the following pertinent facts offered by the County Defendants:

> During the time at issue, MCCF was implementing a not yet fully functional computer program which would allow staff to verify medical authorizations. As such, the practice in place required inmates to be in possession of their medical authorization indicating a need for alternative cuffing. If the inmate failed to possess the authorization he would be denied the alternative cuffing. That policy was provided to Plaintiff and contains mandatory language advising the inmate of the necessity of possessing the authorization for the authorization to be effective. MCCF inmates who are being transferred to outside appointments are handcuffed by Montgomery County Sheriff's deputies rather than by MCCF correctional staff. The Sheriff's Office policy is to use a single set of handcuffs behind the back.
>
> ****
>
> On September 24, 2010, Sgt. Tate was working in the Traffic Office in the Processing area of MCCF, coordinating the transportation of MCCF inmates to the custody of the Montgomery County's Sheriff's Office. Sgt. Tate heard a commotion in the Processing area. He came out of the Traffic Office and observed Plaintiff refusing to be handcuffed by sheriff's deputies. Sgt. Tate instructed Plaintiff to comply with the deputy. Plaintiff responded that, for medical reasons, he needed two sets of handcuffs. Sgt. Tate asked whether Plaintiff had the medical authorization slip. Plaintiff responded, "No, but it hasn't been a problem before!" Sgt. Tate informed Plaintiff he was required to be in possession of his paperwork but he would call medical to verify the authorization. Approximately five minutes after contacting the medical unit, Sgt. Tate received verification that Plaintiff had authorization to use

4

two sets of handcuffs. When Sgt. Tate exited the
Traffic Office to confer with the sheriff's deputies,
he was advised that the matter had been taken care of.
Sgt. Tate saw Plaintiff walking out of Processing to
board the transport van along with other inmates but
did not notice whether Plaintiff was single or double
cuffed.

Mem. Opinion 3-5, ECF No. 41 (citations omitted).

## II. Discussion

**A.  Default Judgment**

On August 8, 2012, Tweh commenced this action against all Defendants. (ECF No. 1). A Summons was issued and, on December 19, 2012, the summons was returned executed as to Sheriff Defendants. (ECF No. 19). Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), a responsive pleading is due within 21 days of being served with the summons and complaint. "The filing of a Motion to Dismiss constitutes defending an action within the meaning of Rule 55(a)." Hudson v. State of N.C., 158 F.R.D. 78, 80 (E.D.N.C. 1994) (citing Wickstrom v. Ebert, 101 F.R.D. 26, 33 (E.D.Wis.1984)).

Here, Sheriff Defendants' Motion to Dismiss was filed on August 16, 2013, more than eight months after the responsive pleading was due. Notwithstanding the fact that Defendants' Motion to Dismiss was untimely, Tweh filed a response in opposition to the Motion to Dismiss. (ECF No. 47). Tweh then waited an additional 30 days prior to filing his Motion for

5

Default Judgment. (ECF No. 51). As evidenced by his decision to respond to Defendants' motion prior to filing for Default Judgment, Tweh did not suffer substantial prejudice by the delay in filing the Motion to Dismiss. Further, at the time Tweh moved for default judgment, the Sheriff Defendants, having cured their default by filing the Motion to Dismiss, however late, were no longer in default. Moreover, the United States Court of Appeals for the Fourth Circuit has stated a strong preference for cases to be decided on their merits. United States v. Shaffer Equip. Co., 11 F.3d 450, 453 (4th Cir. 1993). For all of these reasons, plaintiff's motion for default judgment will be denied.

**B.  Standard of Review**

**1. Motion to Dismiss**

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007) (internal citations omitted); see Fed.R.Civ.P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006)

(internal quotation marks and alterations omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." Id.; Twombly, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Twombly, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd.,

551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. Labram v. Havel, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests," the plaintiff's legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. Twombly, 550 U.S. at 556 n.3.

### 2. Summary Judgment

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[T]he mere existence

8

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

A "material fact" is a fact that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(c) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon

another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985).

**B. Analysis**

    **1.   Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976) (citing) Furman v. Georgia, 408 U.S. 238, 392-93, (1972).[4] "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003).

In order to state a claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106

---

[4] Plaintiff's status during his incarceration at MCCF is unclear. The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). "Due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner." Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)); see also Riley v. Dorton, 115 F.3d 1159, 1167 (4th Cir. 1997) (noting that a pre-trial detainee's Fourteenth Amendment right with respect to excessive force is similar to prisoner's Eighth Amendment right).

(1976).[5] Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. Id. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment." Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995) (quoting Farmer, 511 U.S. at 844) (internal quotation marks omitted). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not

---

[5] The United States Court of Appeals for the Fourth Circuit "has concluded that denial-of medical-care claims asserted by pre-trial detainees are [also] governed by the deliberate indifference standard." Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001).

averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2001).

In determining whether excessive force was used, the Court must determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Court must consider the need for application of force, the relationship between that need and the amount of force applied, the extent of the injury inflicted, the extent of the threat to the safety of the staff and inmates as reasonably perceived by prison officials, and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkens v. Gaddy, 559 U.S. 34. The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but, if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner had the good fortune to escape serious harm. Id. at 38.

Tweh's allegation that Green and Songco were deliberately indifferent to his serious medical need is refuted by the record. It is undisputed that at the time at issue Tweh did not have with him, as required by MCCF policy, the medical authorization that he be double handcuffed. Sheriff Defendants aver that they were unaware Tweh possessed a valid authorization for double cuffing prior to handcuffing him. As previously noted by the Court, County Defendant Tate was able to verify, on the date of the incident, Tweh's order for double cuffing, but when he returned to advise the Sheriff Defendants, the matter was already resolved as Tweh was already handcuffed and under escort. There is no indication that the authorization for double cuffing was ever communicated to the Sheriff Defendants and in fact they aver they were not aware of the order. As such, it cannot be said that Green or Songco had subjective knowledge of a risk of harm to Tweh.

Tweh's claim of excessive force similarly fails. Sheriff Defendants explain that the force used was minimal and was undertaken in order to keep security in transporting Tweh and other inmates to court. The force used, application of handcuffs, was necessary in order to secure Plaintiff for transport. Additionally, the force was tempered in that Tweh was given an opportunity to comply with lawful orders to submit

13

to handcuffing before deputies held him and forced his submission. In light of the foregoing, Sheriff Defendants are entitled to summary judgment.

**2. Failure to Comply with Policy**

With respect to Tweh's argument that the Sheriff Defendants did not follow policy in verifying his handcuffing authorization, the adoption of procedural guidelines does not give rise to a liberty interest. Riggins v. Green, No. PJM-09-289, 2009 WL 7042240, at *3 (D.Md. May 21, 2009) aff'd, 332 F. App'x 867 (4th Cir. 2009); see also Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987) ("The adoption of mere procedural guidelines, however, does not give rise to a liberty interest protected under the fourteenth amendment."). Thus, regardless of any alleged violations of internal regulations, the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. Weatherholt v. Bradley, 316 F. App'x 300, 303 (4th Cir. 2009) (quoting Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996)). Accordingly, the Court rejects this argument.

**3. Eleventh Amendment**

The Eleventh Amendment immunizes states from suit brought in federal court absent waiver from the state or a clear congressional exercise of its power under the Fourteenth

Amendment. See Will v. Michigan, 491 U.S. 58, 66 (1989). The State of Maryland has not expressly waived its immunity under the Eleventh Amendment to such suits. A suit against a state officer in his official capacity is the equivalent to a suit against the state itself. Brandon v. Holt, 469 U.S. 464, 471-72 (1985). Thus, Defendants Green and Songco, sued as individually-named Defendants in their official capacity, are immune from suit and any claim against them stated as such is subject to dismissal.

### III. Conclusion

For the reasons stated above, summary judgment is granted in favor of the Sheriff Defendants.[6] A separate Order shall be entered in accordance with this Memorandum.

December 2, 2013 /s/
_____
George L. Russell, III
United States District Judge

---

[6] Having found no constitutional violation, the Court need not address Defendants' claim of qualified immunity. Additionally, to the extent the Complaint can be construed as raising state law claims, the Court declines to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3) (2012); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).